UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

CHAMBERS OF
THE HONORABLE GINA L. SIMMS
UNITED STATES MAGISTRATE JUDGE
MDD_GLSchambers@mdd.uscourts.gov

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770
(301) 344-0627 PHONE
(301) 344-8434 FAX



April 23, 2018

Stephen F. Shea, Esq.
Elkind and Shea
801 Roeder Rd. Ste. 550
Silver Spring, MD 20910

Lindsay Nicole Norris. Esq.
Social Security Administration
6401 Security Blvd.
Baltimore, MD 21235

Subject: *Hofmann v. Colvin*[1]
Civil No.: 8:16-cv-03002-GLS

Dear Counsel:

Pending before this Court, by the parties' consent, are their cross motions for summary judgment. (ECF Nos. 2, 6, 15, 18). The Court must uphold the Social Security Administrations's ("SSA's") decision if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3) (2016); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Upon review of the pleadings and the record, the Court finds that no hearing is necessary. (L.R. 105.6). For the reasons set forth below, Plaintiff's Motion is DENIED and the Defendant's Motion is GRANTED. I am affirming the SSA's judgment.

## I. BACKGROUND

On August 21, 2012, Plaintiff filed a Title II Application for Disability Insurance Benefits, alleging that disability began on November 1, 2009. (Tr. 16). Plaintiff's application was denied initially (January 22, 2013), and upon reconsideration (July 16, 2013), by the Social Security Administration ("SSA"). *Id.* Plaintiff's request for a hearing was granted and conducted on February 27, 2015 by Administrative Law Judge ("ALJ") Michael A. Krasnow. The ALJ issued his decision that Plaintiff was not disabled on April 1, 2015. (Tr. 12). The SSA Appeals Council denied Plaintiff's request for review on October 9, 2015. (Tr. 6). Accordingly, the ALJ's opinion became the final and reviewable decision of the Commissioner. *Id.*

Plaintiff petitioned this Court on August 27, 2016, raising three arguments. First, that the ALJ's Residual Functional Capacity ("RFC") determination was erroneous. Second, that the ALJ did not appropriately evaluate the Plaintiff's subjective complaints of pain. Third, that the ALJ did not properly develop the record because he did not order a consultative examination.

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

## II. DISCUSSION

### A. The RFC Determination

Plaintiff argues that the ALJ erred in performing the function-by-function assessment of her ability to perform the physical and mental demands of work. Specifically, Plaintiff avers that the ALJ: 1) improperly evaluated the opinions of a Disability Determination Service ("DDS") physician and a consultative examiner; and 2) failed to explain why he did not include a sit/stand option in his assessment.

The RFC determination "must be based on all the relevant evidence in [plaintiff's] case record. 20 C.F.R. § 404.1545(a)(1) (2012). The ALJ must include a narrative discussion describing how the evidence supports his RFC determination. Social Security Ruling (SSR) 96-8p, 61 Fed. Reg. 34, 474, 34,475 (July 2, 1996). The ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Petry v. Comm'r, Soc. Sec. Admin.*, No. 16-464, 2017 WL 680379, at \*\*1, 2 (D. Md. Feb. 21, 2017) (internal citations omitted). In evaluating the ALJ's RFC determination, the Court's role is not to "reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence." *See Fulton v. Comm'r of Soc. Sec.*, No. 15-2419, 2016 WL 1460463, at \*\*1, 3 (D. Md. Apr. 14, 2016) (internal citations omitted).

### 1. The ALJ's Findings

As a preliminary matter, I note that the ALJ's evaluation and description of the evidence was comprehensive. The ALJ considered objective medical evidence and subjective evidence of Plaintiff's pain, including her complaints of "chronic pain, arthritis, obesity, and anxiety." (*See, e.g.*, Tr. 23). The ALJ also considered opinion evidence from Drs. Hakkarinen, Singh, Brophy and Denekas, as well as from consultative examiner Dr. Toloria Braswell, and described the evaluations of Plaintiff's physical ailments. (*See* Tr. 21–32, 34, 42, 88–89, 333–346, 358, 369).

The ALJ's function-by-function analysis methodically addressed plaintiff's abilities. For example, the ALJ reviewed plaintiff's history of suffering from back problems from the mid-1990's onward. (*E.g.*, Tr. 23, 27). The ALJ discussed plaintiff's leg pain and anxiety, and plaintiff's testimony that she can stand for no more than five minutes at a time, that she can only lift five to six pounds, and that she has difficulty sleeping. (Tr. 23–27). In addition, the ALJ noted plaintiff's ability to drive, her bi-weekly routine of visiting Walmart, her capacity to sit at her sewing machine for twenty minutes at a time, and her use of yoga to deal with her fibromyalgia. (Tr. 24). Furthermore, the ALJ mentioned plaintiff's vacationing on a Bahamian cruise when her husband retired in May, 2014. *Id*. In sum, the ALJ's review of the record was comprehensive and his function-by-function analysis formed a bridge to his conclusions. *See, e.g.*, *Petry*, 2017 WL 680379, at \*2.

**2. Plaintiff's Arguments**

First, I find unpersuasive Plaintiff's critiques of the ALJ's discussion of the examinations performed by Drs. Braswell and Hakkarinen. (ECF No. 15 at 6–7). Plaintiff asserts that the ALJ failed to include Dr. Braswell's finding that plaintiff had issues with mobility and range of motion. (ECF No. 15 at 7). With respect to Dr. Hakkarinen's examination, plaintiff contends that the ALJ mistakenly afforded it great weight because Dr. Hakkarinen did not consider Dr. Braswell's findings as to plaintiff's troubles with mobility and range of motion. (ECF No. 15 at 6).

I find that the ALJ analyzed the reports while performing his comprehensive review of the record as a whole. For example, the ALJ discussed Dr. Braswell's diagnosing plaintiff with unspecified back pain, depressive disorder not elsewhere classified, and malignant essential hypertension. (Tr. 28). The ALJ noted Dr. Braswell's finding that plaintiff could walk, stand, sit, lie down, travel, and handle objects. (Tr. 29). The ALJ gave Dr. Braswell's finding only "some weight" because she did not explain why she did not find any functional limitations with respect to plaintiff. (Tr. 32) (citing Ex. 3F). With respect to Dr. Hakkarinen's examination, the ALJ afforded it "significant weight" because it was consistent with his comprehensive review of the record. (Tr. 31) (citing Exs. 1A, 3A). Thus, the ALJ's discussion of both Drs. Braswell and Hakkarinen's opinion evidence was substantial. *See Green v. Colvin*, 936 F. Supp. 2d 216, 225 (W.D.N.Y. 2013) ("[T]he record reflects that [the ALJ] weighed [the physicians] conclusions against the record as a whole. . . and reasonably concluded that the medical opinions lacked the necessary clinical support.").

More importantly, the ALJ was not required to discuss all the evidence submitted, nor can plaintiff infer that his not citing to specific evidence raised signifies anything. *See Stormes v. Comm'r of Soc. Sec. Admin.*, No. 12-3177, 2013 WL 4945318, at \*\*1, 2 (D. Md. Sept. 11, 2013) ("[A]n ALJ is not required to discuss each piece of evidence in the record, as long as a reviewing court can determine from the opinion 'what the ALJ did and why he did it.'") (internal citation omitted).

Second, the ALJ did consider and describe how he evaluated the testimony from the VE, Dr. Adina Leviton,[2] regarding the sit/stand option. During the administrative hearing, the VE testified that plaintiff *could* perform past work as a legal secretary as defined under the *Dictionary of Occupational Titles* ("DOT"). (Tr. 76). The VE further testified that there are several other jobs in the local or national economy that plaintiff *could* perform as well (*e.g.*, clerk for food or beverage, charge account clerk, etc.). (Tr. 77). This conclusion remained steadfast even were plaintiff to require a cane for ambulation. The VE also stated that if plaintiff required a thirty-minute sit/stand option, she *could* perform past work as long as she is productive while sitting or standing. (*See* Tr. 78). While the VE mentioned that legal secretaries *may* not have thirty minute sit/stand options because of the fluid nature of their daily routine, the VE never said they *must*. (Tr. 79). Notably, as the Defendant points out, plaintiff did not identify any objective

---

[2] Dr. Leviton's last name was misspelled "Levington" in the Official Transcript.

evidence demonstrating the need for a sit/stand option. (ECF No. 18 at 6).

In sum, the Court holds that there is substantial evidence supporting the ALJ's RFC determination under applicable legal standards. *See Perales*, 402 U.S. at 401.[3]

### B. Claimant's Subjective Complaints and Credibility

Plaintiff contends that the ALJ failed to truly assess her subjective complaints of pain and failed to explain why he found portions of her testimony not credible. (ECF No. 15 at 8, 10). While the Court appreciates plaintiff's testimony as to her pain, it nevertheless concludes that the ALJ's credibility determination is supported by substantial evidence.

In general, an ALJ should follow the two-step process established in *Chater* to evaluate a claimant's subjective complaints of pain and/or symptoms. *See Chater*, 76 F.3d at 591. The ALJ should first ensure that subjective claims are supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain. *Id.* After meeting that threshold, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595. The Fourth Circuit clarifies that a claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, *including objective evidence of the underlying impairment*, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges . . ." *Id.* (emphasis added).

When evaluating complaints of pain, an ALJ must cite evidence specifically supporting his conclusions. *Hammond v. Heckler*, 765 F.2d 424 (4th Cir. 1985) (citing *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). The ALJ must identify statements that lack credibility, not merely state whether plaintiff is credible in general terms. *See Mascio v. Colvin*, 780 F.3d 632, 639–40 (4th Cir. 2015).

Here, the ALJ correctly followed the standard for performing RFC determinations, including credibility determinations. (Tr. 22). Contrary to plaintiff's contention, the ALJ's credibility determination cited to the record and provided specific rationales for rejecting specific allegations. For example, the ALJ found that plaintiff's explanations for being unable to pay $200.00 for an X-ray or $6.00 to attend aqua therapy classes were undermined by the fact that she went on a seven day Bahamian cruise. (Tr. 31). The ALJ also reasoned that the alleged severity of the pain described by plaintiff was inconsistent with her activity level, her adequate performance of past work when she had a similar medical condition, and the lack of supporting medical evidence. (Tr. 30–31). Thus, unlike in *Mascio*, the ALJ's analysis of plaintiff's credibility here was sufficiently specific. Because the ALJ thoroughly assessed plaintiff's

---

[3] Plaintiff tangentially argues that she is disabled at step five of the sequential evaluation process. (ECF No. 15 at 3. n.1). The ALJ's RFC determination, as noted above, is supported by substantial evidence; therefore, his conclusion that Plaintiff can perform her past work at step four controls. (*See* Tr. 33). The ALJ's conclusion in the alternative at step five—that plaintiff could perform other work in the national or local economy—is also supported by substantial evidence. *See Perales*, 402 U.S. at 401; Tr. 33–35.

credibility, his decision is entitled to deference.

The case law cited by plaintiff is inapposite here. In *Lewis v. Berryhill*, the Fourth Circuit remanded the case to the district court for two reasons: 1) the ALJ did not adequately explain which statements made by plaintiff undercut her credibility; and 2) the ALJ strictly relied on the lack of objective evidence in discounting plaintiff's pain. 858 F.3d 858, 866 (4th Cir. 2017). Here, however, the ALJ did reference statements made by plaintiff that he believed undercut her credibility. The ALJ incorporated subjective and objective evidence into his decision (*e.g.*, plaintiff's bi-weekly trips to Walmart, her Bahamian cruise, etc.). In addition, in *Bostrom v. Colvin*, the ALJ concluded that plaintiff was not entirely credible. 134 F. Supp. 3d 952, 960 (D. Md. 2015). The case was remanded because the ALJ did not explain how he decided which of plaintiff's statements he believed, and which he discredited. The instant case is distinguishable because the ALJ found plaintiff's statements were not entirely credible. (Tr. 30–31). Moreover, there was no testimony here from Dr. Leviton suggesting that plaintiff could not do any full-time work if her subjective complaints of pain were true. (Tr. 76).

Accordingly, the Court concludes that there is substantial evidence supporting the ALJ's credibility determination under applicable legal standards.

### C. The Development of the Record

Plaintiff asserts that the record is inadequately developed because the ALJ denied her request for a consultative examination (*i.e.*, X-Rays of her back). (ECF No. 15 at 12). According to plaintiff, this request was purportedly justified under the relevant regulatory framework.

Plaintiff has the burdens of proof and production during the first four steps of the sequential evaluation to show that she is disabled. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). If plaintiff is able to carry her burden through the fourth step of the sequential evaluation process--, i.e., she demonstrates that she is impaired and cannot perform her past work-- then the burden shifts to the defendant in the fifth step to show that other work is available in the local or national economy that plaintiff could perform. *Id*. ALJs have broad discretion to order a consultative examination. 20 C.F.R. §§ 404.1512(b)(2), 404.1517, 404.1519a; *Whaley v. Comm'r of Soc. Sec.*, No. 11-3113, 2014 WL 1023833, at **1, 5 (D. Md. Mar. 14, 2014). The basis for ordering consultative examinations is "necessity," such as when there is insufficient or inconsistent evidence in the record. *Id*.

While the Court is mindful of the fact that plaintiff could not secure the X-rays because she lacked insurance, plaintiff did not demonstrate that a consultative examination was necessary. The three hundred and seventy-six page official transcript contains numerous medical reports from physicians addressing plaintiff's alleged back pain. (Tr. 27–29, 81–96, 346–51). None of these reports were materially inconsistent, ambiguous, or otherwise suggested that X-rays were necessary. (*See* Tr. 27–29, 81–96, 346–51) (mentioning no medical need for X-Rays); *see Whaley,* 2014 WL 1023833, at *5 (holding that the ALJ was not required to order a consultative examination because there was no direct conflict in the medical evidence and

because ALJs have broad discretion in considering consultative examination requests). The ALJ's exercise of his discretion in denying the consultative examination request was appropriate here.

Accordingly, the Court holds that there is substantial evidence supporting the adequacy of the ALJ's development of the record under applicable legal standards. *See Perales*, 402 U.S. at 401.

### III. CONCLUSION

For the reasons stated above, the Plaintiff's Motion for Summary Judgment, (ECF No. 15), is DENIED and the Defendant's Motion for Summary Judgment, (ECF No. 18), is GRANTED. The SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it will constitute an Order of the Court and will be docketed accordingly.

Sincerely,

/s/

The Honorable Gina L. Simms
United States Magistrate Judge